UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRUDY JEANNE ARCHULETA,<br><br>         Plaintiff,<br><br> v.<br><br>MARTIN O'MALLEY,<br>Commissioner of the Social Security Administration*,*<br><br>         Defendant. | Case No. 3:24-cv-00126-CLB<br><br>**ORDER DENYING MOTION FOR REVERSAL AND/OR REMAND**<br><br>[ECF No. 13] |

  This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Trudy Jeanne Archuleta's ("Archuleta") application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently pending before the Court is Archuleta's motion for reversal and/or remand. (ECF No. 13.) The Commissioner filed a response, (ECF No. 17), and Archuleta filed a reply, (ECF No. 18). Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 12), the Court concludes that the Commissioner's finding that Archuleta was not disabled under sections 216(i) and 223(d) of the Social Security Act was supported by substantial evidence. Therefore, the Court denies Archuleta's motion for remand and/or reversal, (ECF No. 13).

**I. STANDARDS OF REVIEW**

  **A. Judicial Standard of Review**

  This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which

the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate

factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B. Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have

a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the

individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual can do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.    CASE BACKGROUND

### A.    Procedural History

Archuleta applied for disability insurance benefits ("DIB") on June 24, 2020, with an alleged disability onset date of January 4, 2020. (AR 22, 277-85.) Archuleta's application was denied initially on December 11, 2020, and again upon reconsideration on August 5, 2021. (AR 22, 154-58, 166-71.) Archuleta subsequently requested an administrative hearing and on January 12, 2023, Archuleta and her attorney appeared at a telephonic hearing before an ALJ. (AR 90-119, 172-92.) A vocational expert ("VE") also appeared at the hearing via telephone. (AR 90-119.) The ALJ issued a written decision on February 2, 2023, finding that Archuleta was not disabled because she has the residual functional capacity to perform past relevant work. (AR 19-50.) Archuleta appealed, and the Appeals Council denied review. (AR 1-7.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Archuleta filed a

complaint for judicial review on March 18, 2024. (*See* ECF No. 2.)

**B.     ALJ's Decision**

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 19-50.) Ultimately, the ALJ found that Archuleta could perform her past relevant work and thus, the ALJ found that Archuleta had not been under a disability as defined in the Social Security Act from the alleged onset date–January 4, 2020–through the date of the decision. (*Id.*)

In making this determination, the ALJ started at step one. Here, the ALJ found Archuleta had not engaged in substantial gainful activity since the alleged onset date of January 4, 2020. (AR 25.) At step two, the ALJ found Archuleta had the following severe impairments: degenerative disc disease lumbar spine; degenerative disc disease cervical spine status post fusion; COPD; and complex regional pain syndrome (CRPS) left upper extremity. (AR 26-27.) The ALJ also found Archuleta has "nonsevere" medically determinable mental impairments which cause "no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." (AR 27.) At step three, the ALJ found Archuleta did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (AR 27.)

Next, at step four, the ALJ determined Archuleta has the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b) except:

> lifting 10 pounds with the left upper extremity; walking/standing 4 hours in an 8-hour workday and sitting the remaining portion of the day; frequent bilateral pushing/pulling and frequent bilateral use of foot pedals; frequent bilateral overhead reaching; frequent left reaching, handling, and fingering (dominant); occasional postural activity except frequent balancing; frequent exposure to pulmonary irritants and vibrations, and occasional exposure to hazards; off task 3-5% of the work day; and alternate positions approximately every 30 minutes.

(AR 27.) The ALJ found Archuleta's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Archuleta's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 27-39) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and other evidence in the record. (*Id.*)

Relying on the testimony of the VE, the ALJ determined that Archuleta's age, education, work experience, and RFC would allow her to perform her past relevant work as an Administrative Clerk and Composite Job compromised of office management and dispatch. (AR 39-40.) Accordingly, the ALJ found Archuleta had not been under a disability since the alleged onset date of January 4, 2020, through the date of the decision, and denied Archuleta's claim. (AR 40.)

### III.   ISSUE

Archuleta seeks judicial review of the Commissioner's final decision denying DIB under Title II of the Social Security Act. (ECF No. 13.) Archuleta raises the followings issues for this Court's review: (1) whether the ALJ failed to provide sufficient analysis to explain why Archuleta's mental limitations were excluded from the ALJ's RFC finding; and (2) whether the ALJ failed to account for the "total limiting effects" of Archuleta impairments.

### IV.   DISCUSSION

**A.   The ALJ properly accounted for Archuleta's mental limitations when determining Archuleta's RFC.**

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); *see also Valencia v. Heckler*, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's capabilities in light of his or her limitations. An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record. *See* SSR 85-15.

At Step 4, the ALJ determined Archuleta's residual functional capacity and found Archuleta can perform the full range of light work with some physical limitations. (AR 27-39.) The ALJ did not provide for any mental limitations. (*See id.*) In doing so, the ALJ considered Archuleta's statements and testimony concerning the limiting effects of her various impairments. (*Id.*) Overall, the ALJ gave Archuleta's statements and testimony little weight, finding that the objective record as well as Archuleta's activities of daily living were consistent with the conclusion that Archuleta remains capable of light work. (*Id.*) The ALJ also considered medical opinions of numerous doctors and stated which doctors, and to what degree, he was persuaded by in making his findings. (AR 36-39.)

Archuleta contends the ALJ's residual functional capacity assessment is flawed because it fails to account for mental limitations the ALJ found were supported by the record. (ECF No. 13 at 5-11.)

In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); *see also Valencia*, 751 F.2d at 1085 (residual functional capacity reflects current "physical and mental capabilities"). Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure, the Psychiatric Review Technique ("PRT"). *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a). In doing so the ALJ is required to record pertinent findings and rate the degree of functional loss. *See* 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

Here, neither party contends that the ALJ's findings of "nonsevere" mental limitations at Step 2 were improper. (AR 25; ECF Nos. 13 at 5-8, 17 at 4-5.) The ALJ found:

> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere.
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The

> following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(AR 26.)

Based on the ALJ's findings at Step 2, Archuleta argues the ALJ erred at Step 4 by failing to account for any mental limitations in Archuleta's residual functional capacity. According to Archuleta:

> [T]he ALJ's exclusion of mental impairments from the RFC while, at the same time finding that Plaintiff's mental impairments have at least some effect on her ability to perform skilled and semiskilled work, cannot reasonably be described as harmless error. . . . [T]he ALJ failed to build the required "logical bridge" between her step 2 finding and the RFC, which contains no mental limitation at all.

(ECF No. 13 at 7, 10.)

But the Court does not agree. In *Woods v. Kijakazi*, the Ninth Circuit upheld the ALJ's determination that the plaintiff had non-severe mental impairments based on application of the PRT at Step 2 revealing only mild limitations. 32 F.4th 785, 794 (9th Cir. 2022). In *Woods*, the claimant faulted the ALJ for not including mental limitations in her RFC. *Id.* at 794. The ALJ considered the claimant's mental health records and assessed her mental functioning using the PRT. The ALJ found that the claimant had mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace, but the ALJ did not include any mental restrictions in claimant's RFC. *Id.* at 788, 793, 795. The ALJ concluded that the claimant was not disabled because she could do her past relevant work. *Id.* at 788. On appeal, the Ninth Circuit affirmed the ALJ's decision, finding no procedural error, even though the ALJ did not include any mild mental limitations in the RFC. *Id.* at 794; *see also Tyson v. Kijakazi*, No. 1:21-cv-00688-BAM, 2023 WL 2313192, at *5 (E.D. Cal. Mar. 1, 2023) ("As in *Woods*, the court likewise finds that the ALJ did not err by failing to include any mild mental limitations in the RFC."); *Hilda V.A. v. Kijakazi*, No. 5:22-cv-01064-KES, 2023 WL 1107867, at *4 (C.D. Cal. Jan. 30, 2023) (noting *Woods* resolved previous district court conflict regarding whether the ALJ erred in finding mild mental limitation in the PRT analysis and then failing to account for

those limitations in the RFC, and finding no procedural error where the ALJ indicated the RFC reflects the degree of limitation found in the PRT analysis). Like in *Woods*, here, the Court finds that the ALJ did not err for failing to include nonsevere mental limitations in his RFC determination.

Archuleta further argues that if the mild mental limitations were not included in the RFC, then the ALJ was required to explain why he was omitting such limitations. (ECF No. 13 at 10.) The ALJ here expressly stated that the RFC assessment "reflects the degree of limitation . . . found in the 'paragraph B' mental function analysis." (AR 26.) When an ALJ performs the Paragraph B analysis and indicates the "degree of limitation" is incorporated into the RFC, this is sufficient to carry the burden imposed by the Regulations. *Van Houten v. Berryhill*, No. 1:17-CV-01238 - JLT, 2019 WL 691200, at *14 (E.D. Cal. Feb. 19, 2019) ("The omission of mental limitations from the RFC does not indicate the mental impairments were not considered, but rather reflects the conclusion that the impairments would not interfere with Plaintiff's ability to perform basic work activities."); *Fambrini v. Saul*, No. 4:19-CV-03701-KAW, 2020 WL 7027434, at *2 (N.D. Cal. Nov. 30, 2020); *see also Hilda V. A.*, 2023 WL 1107867, at *4 (rejecting procedural argument that if an ALJ decides not to include any functional restrictions in a claimant's RFC due to mild mental limitations assessed during the PRT, then the ALJ must expressly explain why not).

The regulations provide additional guidance regarding mental limitations. Under 20 C.F.R. § 404.1520a(d), the claimant's mental residual functional capacity is only assessed in light of mental impairments found to be severe. Specially, the rule provides: "[i]f we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity." 20 C.F.R. § 404.1520a(d)(3).

Assuming without accepting that the ALJ made an error in his RFC determination the Court finds such an error to be harmless. An error is harmless if substantial evidence remains to support the ALJ's decision, and the error does not affect the ALJ's ultimate determination. *Molina v. Astrue*, 754 F.3d 1104, 1115 (9th Cir. 2012). While Archuleta

argues that the ALJ made a harmful error, she does not identify any evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning. *See Woods*, 32 F.4th at 794. Here, at step two, the ALJ thoroughly assessed Plaintiff's mental limitations and determined that evidence supports no more than a minimal limitation in Plaintiff's ability to do basic work activities. (AR 26.) While the ALJ did not state it, she determined that the mental impairments had no impact on the RFC. (AR 27-39). This is supported by substantial evidence, both outlined in the ALJ's opinion at step two and discussed above. As in *Woods*, Archuleta fails to "identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's finding regarding her mental functioning." *See* 32 F.4th at 794. Further, the claimant usually bears the burden of proving that an error is harmful. *See Molina*, 674 F.3d. at 1111. Archuleta has not shown that such an error by the ALJ would demand remand in these circumstances. As such, the Court cannot conclude that the ALJ's RFC contains harmful errors or lacks support from substantial evidence. *See id*.

**B.   The ALJ properly articulated clear and convincing reasons for rejecting Archuleta's subjective testimony.**

Next, Archuleta argues that the RFC is contrary to law and not supported by substantial evidence because the ALJ did not properly evaluate Archuleta's subjective report of symptoms. (ECF No. 13 at 11-22.) Archuleta argues the ALJ's errors are errors of "omission", and the only appropriate remedy is remand. (*Id.* at 21-22.)

By contrast, the Commissioner argues that the ALJ provided multiple valid reasons for discounting Archuleta's subjective testimony, namely that: (1) objective medical findings did not support the extent of her allegations; (2) Archuleta's activities contradicted her allegations of disabling limitations; and (3) Archuleta's reports of improvement contradicted her alleged limitations and claim that she was totally disabled. (ECF No. 17 at 8-16.)

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether

there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* (quotation omitted); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, inter alia, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

A review of the record shows the ALJ provided specific, clear, and convincing reasons for finding Archuleta's statements concerning the intensity, persistence, and limiting effects of her symptoms less than credible.

### 1.  Objective Medical Evidence

An ALJ "may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged." *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) (citing *Reddick*, 157 F.3d at 722). But an ALJ may

discredit a plaintiff's testimony when it contradicts evidence in the medical record. See *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Here, the ALJ relied on objective medical evidence that supports the RFC rather than Archuleta's subjective allegations of pain and impairments. Although the ALJ cannot cherry pick objective medical evidence from the record, they can consider contrary objective medical evidence in making a credibility determination. Here, the ALJ provided a thorough summary of the medical evidence in which he highlighted specific objective findings that support the assigned RFC. (AR 27-39.) Because those findings conflicted with Archuleta's pain and symptom testimony, the ALJ found that her testimony was not credible because it was inconsistent with the objective medical evidence. Thus, based on these findings, the ALJ found that Archuleta was capable of performing past relevant work. Accordingly, the Court finds the ALJ provided clear and convincing reasons for finding Archuleta not credible to the extent her testimony exceeds the RFC.

### 2. Archuleta's Daily Activities

An ALJ may discredit a claimant's testimony when she reports participation in everyday activities indicating capacities that are transferable to a work setting. See *Molina*, 674 F.3d at 1112-13; 20 C.F.R. § 404.1529(c)(3)(i). Further, the inconsistency between a claimant's alleged symptoms and her daily activities is sufficient to support a finding that a plaintiff was not entirely credible. *See Lingenfelter*, 504 F.3d at 1040 (When determining credibility, an ALJ may consider "whether claimant engaged in daily activities inconsistent with alleged symptoms."). Specifically, daily activities may be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, the ALJ also found Archuleta less credible because the account of her daily activities was inconsistent with her alleged limitations. (AR 28-29); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant

less credible). The ALJ specifically pointed to multiple inconsistencies between Archuleta's reported daily activities and her limitations. Archuleta alleges that she has difficulty "sustain[ing] activities involving sitting/standing/walking and using her hands for more than relatively short periods of time before needing to lie down, rest, and use pain medication, as well as her TENS unit and heat/ice." But as the ALJ noted, Archuleta's daily activities included personal care, performing household chores, shopping in stores, preparing meals, driving a car, and taking her dog out several times daily. (AR 28.)

Although the ALJ did not explain how each of Archuleta's activities contradicted her testimony, the above activities directly contradict Archuleta's testimony and the ALJ was entitled to rely on them in discounting Archuleta's testimony. *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) ("If the evidence can reasonably support either affirming or reversing the Commissioner's decision, this panel may not substitute its judgment for that of the Commissioner"). Based on these, and other findings, the ALJ determined Archuleta's subjective symptom testimony was inconsistent with her alleged impairments.

### 3. Improvement with Treatment

"Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see Bailey v. Colvin*, 669 Fed.Appx. 839, 840 (9th Cir. 2016) (unpublished) (no error in discounting claimant's testimony where "medical evidence suggest[ed] that many of [her] impairments had improved ... or responded favorably to treatment"). Archuleta's providers, and Archuleta herself, reported some improvement, and her level of reported improvement was entirely consistent with an ability to perform a very reduced range of sedentary work, (AR 28-29, 36, 339-42, 361-63.) Here, the ALJ reasonably relied on Archuleta's providers' statements regarding the effectiveness of his treatments and her own statements that she had some improvement with treatment. (AR 28-29.) *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)–

(v). The ALJ "did not summarily dismiss [Plaintiff's] pain complaints but instead carefully considered them." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("It was because of the pain complaints that the ALJ made the finding that [claimant] could not perform repetitive bending and stooping and staying in one position.") (emphasis in original); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of [symptom evaluation] and resolutions of conflicts in the testimony are functions solely of the Secretary.") (citation omitted). The Court finds that this ALJ finding is a specific, clear, and convincing reason to discredit Archuleta's testimony regarding her limitations due to her improvements.

### 4. Work History

Finally, Archuleta argues that the ALJ was required to discuss Archuleta's strong work history but failed to do so. 20 C.F.R. § 404.1529(c)(3) states that an ALJ will "consider all of the evidence presented, including information about your prior work record" but does not require an ALJ to include a discussion related to work history. See *Thomas*, 278 F.3d at 958-59. Nonetheless, to the extent the ALJ's failure to discuss Archuleta's work history was error, such error would be harmless. The Court does not need to uphold all of an ALJ's reasons for discounting a plaintiff's testimony to affirm the ALJ's decision, so long as the ALJ provided other reasons that were specific, clear, and convincing. *See Batson*, 359 F.3d at 1197 (holding that where one of an ALJ's several reasons supporting an adverse credibility finding is held invalid, the error is harmless if it "does not negate the validity of the ALJ's ultimate conclusion that [the claimant's testimony] was not credible"); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid). As discussed above, the Court finds that the ALJ provided other reasons for discounting Archuleta's pain and symptom testimony which are specific, clear, and convincing reasons supported by substantial evidence in the record.

Based on the above, the Court finds the ALJ provided "specific, clear and convincing" reasons supported by substantial evidence for discounting Archuleta's

credibility as to her subjective limitations. *See Fair*, 885 F.2d at 604 ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.").

## V. CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision was supported by substantial evidence and is free of legal error.

Accordingly, **IT IS THEREFORE ORDERED** that Archuleta's motion for reversal and remand, (ECF No. 13), be **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE** this case.

**DATED**: November 15, 2024

_____
**UNITED STATES MAGISTRATE JUDGE**